## McFarlane v. Morgan.

### Opinion delivered February 5, 1923.

1. TAXATION—EFFECT OF LAND COMMISSIONER'S DEED.—A Land Commissioner's deed, reciting that the State had title under forfeiture and sale for taxes of a specified year, would also convey any other title the State may have had.

2. TAXATION—OVERDUE TAX SALE—CONFIRMATION.—Where a tract of land was ordered to be sold in an overdue tax proceeding, but was omitted from the order confirming sales thereunder, the State acquired no title thereto.

3. TAXATION—EFFECT OF OVERDUE TAX PROCEEDING UPON PREVIOUS FORFEITURES.—Under the overdue tax act requiring the court to inquire into the sufficiency of tax sales or forfeitures to vest title in the State, and, if found insufficient, to proceed to order the assessor to assess the lands for the years the taxes were unpaid, *held*, where the court found that a sale to the State of a certain tract was insufficient to vest title and ordered the land to be assessed and thereafter ordered it to be sold, but the sale was never confirmed, such proceedings vacated the prior sale, and the State acquired no title to the land.

4. ADVERSE POSSESSION—PAYMENT OF TAXES FOR SEVEN YEARS.— Under Crawford & Moses' Dig., § 6943, payment of taxes for seven consecutive years on unimproved and uninclosed land gives title.

Appeal from Union Chancery Court; *J. Y. Stevens,* Chancellor; affirmed.

*Jesse B. Moore,* for appellant; *H. B. Martin,* of counsel.

The burden of proof upon the issues presented and upon the whole case was on the appellee. 95 Ark. 445; 142 Ark. 609; 110 Ark. 571; *Id.* 577. The deed of the State Land Commissioner was effective to convey whatever right the State had without reference to its recitals. 43 Ark. 543, 544; 7 Ark. 427; 15 Ark. 331; 76 Ark. 450 *et seq.*; C. & M. Digest, § 6669. The State is not complaining against appellant's title, and the appellee, in view of the title acquired by the State under the overdue tax proceeding, which was duly conveyed by the commissioner to appellant, is in no position to complain. 76 Ark. 450, 458-9. See also 74 Ark. 202,

205-6; 81 Ark. 170, 172-3; 50 Ark. 188, 191-2; 91 Ark. 95 *et seq.*; 72 Ark. 101.  Succession of title and possession from former owner for a series of years, together with continuity of tax payments without break, are requisite to raise any presumption of redemption from forfeiture of land to the State for taxes under previous adjudications of the court. · 47 Ill. 17; 53 Pac. 421 (Cal.); 80 Ark. 520, 522-3; 89 Ark. 300, 307.  There can be no presumption of redemption from tax sales to the State except in favor of the former owner, his heirs and assignees, coupled with possession and payment of taxes without break.  135 Ark. 353, 366-7; 139 Ark. 333; 147 Ark. 247.

*Marsh & Marlin,* for appellee.

In order to vest title in the State to the land in controversy, it was necessary that these things affirmatively appear:  (1) That the land was actually sold to the State at the overdue tax sale.  (2) That such sale was reported by the commissioner who conducted the sale to the chancery court having jurisdiction, and that it confirmed the sale, and (3) that a list of the lands contained in the report of sale as confirmed was filed in the office of the Commissioner of State Lands and in the office of the Auditor of State.  That the land in controversy appears in a descriptive list filed with the Auditor Nov. 8, 1883, which list was never filed in, nor ever confirmed by, any court, is no sufficient evidence of a sale to the State under the overdue tax act of 1881. The certificate of the State Land Commissioner that the land in controversy is not contained in the list filed in his office, as sold to the State at overdue tax sale, is competent evidence of the fact that it was not sold to the State.  But, if the list filed with the Auditor in 1883 be treated as competent evidence of a sale to the State, the proof is ample, and the presumption is overwhelming, that the land was redeemed.  135 Ark. 354; 147 Ark. 247; act No. 621, Acts of 1921.

SMITH, J.  Appellee brought this suit to effect the cancellation of a deed executed by the Commissioner of State Lands on April 21, 1920, conveying to appellant the title of the State to the northeast quarter of the northwest quarter of section eleven, township eighteen south, range sixteen west, as a cloud on his title.

Appellee purports to deraign his title from the United States by an unbroken chain of conveyances; but appellant says that, under the testimony, there are some broken links in this chain.  We do not stop to inquire whether there are missing links in this chain of title or not, for the reasons hereafter stated, and the point to be decided is the effect of this deed.  The Land Commissioner's deed recites that the State had title to the land conveyed under a forfeiture and sale for the taxes of 1868; but it would, of course, convey any other title the State may have had.  *Walker* v. *Taylor,* 43 Ark. 543.

The answer of appellant alleged the fact to be that the land had been sold to the State under an overdue tax decree; that this sale had been duly confirmed and the State acquired the title thereby, and conveyed it to appellant by the deed of the Land Commissioner stated above.  We have before us the record in the overdue tax suit of Union County, a proceeding had under act 39 of the Acts of 1881 (Acts 1881, p. 63).  This was a general act entitled "An act to enforce the payment of overdue taxes," and under it proceedings were had in Union County substantially similar to proceedings had under said act in all the other counties of the State.  Many cases have reached this court which grew out of these proceedings, and we shall attempt no review of this legislation at this time.

The records of Union County, at least the court records, are intact in so far as this overdue tax proceeding is concerned, and this litigation arises out of a difference of opinion as to what the records show in regard to this statutory proceeding.

The first order of the court was that of the clerk in vacation, made pursuant to section 2 of the overdue tax act, warning all persons to appear within forty days and show cause why a lien should not be declared on the lands there described for unpaid taxes, and the same ordered sold. The land in litigation is there described, and this order was made July 13, 1882.

The next order of the court is one in which a decree *pro confesso* is taken, pursuant to section 5 of the act. The court finds that the sales to the State for the non-payment of the taxes for the year set out in the complaint are void, and the assessor of the county was directed to proceed forthwith to reassess the land. This order was made November 1, 1882. The next order recites the filing of the assessment by the county assessor pursuant to the directions of the court.

The next is an order before the clerk in vacation made on October 21, 1882. This order recites that the order of the court requiring the owners of the land in this State to show cause why a lien should not be declared has been duly published, and that the State Auditor has been duly summoned, and no answers have been filed as to the lands therein set out. It is ordered that the complaint be taken as true and confessed. The land here involved is there described.

The next order is found in chancery record "D," and extends from page 576 to page 605, and was made on November 1, 1882. This order recites the previous proceedings, and adjudges that all sales to the State for taxes for the years 1868 to 1878, with the exception of the sale for the taxes of 1871, were void for the reasons therein set forth. It was adjudged that those sale were null and void, and that no title had passed to the State thereby; but it was also adjudged that there were taxes due on these lands, and the amount thereof was set opposite each tract, as was also the cost chargeable against each of said tracts. The taxes so adjudged against the land in suit were $12.03, and the cost as-

sessed at $1.03, making the total taxes and cost $13.06. M. H. Gladden was appointed commissioner, and was directed to advertise and sell the lands in satisfaction of the lien which the court declared against each of said tracts of land for the taxes and costs found due thereon. It was directed that the sale should begin on January 1, 1883, and should continue until all the lands therein described should be sold, unless they had been previously redeemed.

The next record appearing in the transcript is a certificate made by James Guy Tucker, Auditor of State, on August 9, 1921. This certificate of the Auditor recites that there was filed in that office on November 7, 1883, a document containing the following recitals:

> "In the Union Circuit Court
> "April Term, 1883.
> "Commissioner's Report.

"To the Hon. Circuit Court of Union County on the Chancery side thereof.

"Your Commissioner, M. H. Gladden, respectfully submits the following as his report:

"The following tracts and lots of land were each and every one of them on the first and subsequent days of January, 1883, to the 15th day of said month, sold or knocked off to the State of Arkansas, for the aggregate amount of taxes, penalty, costs and attorneys' fees due upon each tract.

"That the sale of said lands was duly advertised in the Union County Times and El Dorado Eagle, two weekly newspapers, published in El Dorado, Union County, of general circulation in said county, for twenty days next before the first day of January, 1883, the date for beginning said sale, in the manner and form, at the time and place, and on the terms required in the decree condemning said land, and as required by law in all respects, and according to the manner, time, terms, quantity and place of said advertisement or notice. The

said tracts and lots of land were duly sold to the State of Arkansas, to-wit:

"Northeast quarter of northwest quarter of section 11, township 18 south, range 16 west (among other lands not included in this case).

"Your commissioner respectfully submits the foregoing report, and asks to be discharged herein.

"M. H. GLADDEN, as Commissioner.

"Sworn and subscribed to before me this 16th day of April, 1883.

"J. C. WRIGHT, Clerk."

Attached to this document was the following certificate:

"State of Arkansas, County of Union.

"I, J. C. Wright, circuit clerk and ex-officio county clerk, do hereby certify that the above and foregoing 62 pages is a full, true and perfect copy of the list of lands sold to the State of Arkansas as at a sale made on the 1st and subsequent days of January, 1883, by M. H. Gladden, comr. appointed by the court to sell said lands, under a decree of the circuit court of Union County, chancery side, Oct. term, 1882, in a suit in said court wherein Union County was plft. and SW¼ of NE¼ of sec. 9, T. 18, R. 10 W., and other lands upon which taxes are due and unpaid, are defts., as appears from the report of said com., now on file in this office, and as the same also appears of record in chancery court record 'D,' pages 579 to 602 inclusive. (Shows lands sold to State including land in controversy).

"Witness my hand and official seal this 3rd day of Nov. 1883.

"J. C. WRIGHT, Clerk.
"By O. A. Mills, D. C."

There is nothing about this document to indicate that this report of the commissioner was ever filed anywhere except in the Auditor's office. The significant thing about this certificate of the clerk is the recital that

the list of lands is that appearing of record in chancery court record "D," pages 579 to 602. That record happens to be the decree of sale. As we have before stated, that decree begins at page 576 and extends to page 605, and necessarily includes pages 579 to 602 mentioned in the clerk's certificate as being the list of lands which he certified as having forfeited to the State. Evidently the pages of the decree preceding page 576 and the pages following page 602 contained the recitals and directions of the decree, and the pages from 579 to 602 contained the descriptions of all the lands ordered sold, of which there were 2,329 tracts, as shown by the report of the commissioner to which we next refer.

And next follows the commissioner's report showing that there were 2,329 tracts of land ordered sold. This report was dated April 27, 1883, and was filed with the clerk of the court on April 28, 1883. This report is as follows:

"To the Hon. Circuit Court of County of Union:

"The commissioner of this court appointed at the October term thereof, 1882, to make sale of certain lands situated in said county in pursuance of the decretal orders of said court in two certain cases therein rendered, to-wit: Union County v. NE SW section 6, township 18, range 10, and Union County v. SW NE section 9, township 18, range 10, respectfully represents that, in pursuance of said orders and decree, he did, after advertising same as required by law, on the 1st day of January and from thence to the 15th January, 1883, inclusive, sell at public outcry the lands mentioned and embraced in said decree, giving his certificates of purchase to the purchasers thereof, and for such tracts or parcels of land and not purchased by individuals were struck off to the State of Arkansas, and a list whereof has been filed in the office of the clerk of said county, as required by law."

The report then recites the collections made by the commissioner, his disbursements thereof, and a state-

ment of the money on hand, but it does not describe any lands.

The next order of the court was made on May 1, 1883, and we copy it in full. It reads as follows:

"Tuesday, May 1, 1883.

"COMMISSIONER'S REPORT.

"Union County, No. 380, against SW NE sec. 9, T. 18, R. 10 W.

"On this 1st day of May, 1883, it being the 8th day of the term, the court takes up the report of the sale of the commissioner, M. H. Gladden, of the sale of lands for overdue tax, and, the same being in due form, and there being no exceptions filed thereto, and it appearing to the court that said lands were duly advertised and sold in accordance with the statute of the State of Arkansas in such cases made and provided.

"It is therefore considered, ordered, adjudged and decreed by the court that said commissioner's report is hereby in all things approved, except as to the NE¼ of SE¼ of section 25, in township 17 south of range 18 west, the order of sale whereof is set aside and held for naught, and the commissioner is ordered to refund the money. And

"It further appearing from said commissioner's report that he collected for and on account of overdue tax and on account of the sale of the said lands the sum of eight hundred and fifty and 92/100 dollars, that said commissioner has paid out and expended out of said sum to the clerk of this court, attorney for the county, printers and commissioner, commissions amounting in the aggregate to the sum of seven hundred and seventy-one and 73/100 dollars, and filed the vouchers for the same, leaving still in commissioner's hands a balance of eighty-eight and 19/100 dollars in Union County scrip."

Evidently the report here approved and confirmed by the court is the report of the commissioner, copied above, in which that officer accounts for the funds re-

ceived and disbursed by him. It appears quite clear that the court here confirmed only one report, and it is equally manifest that the report confirmed was the financial report, which did not purport to show what lands had been sold to the State.

It appears therefore that there is no record showing what lands were sold to the State, except a list of lands which appears to have been filed in the Auditor's office, and not to have been filed anywhere else, and which list appears to have been made by copying the entire list of lands embraced in the decree of sale.

The conclusion which we have announced is reenforced and fortified by the court proceedings which thereafter follow.

The next order of the court was made on October 10, 1891, and is entered in chancery court record "E," pages 376 and 377. This order recites that one C. W. Hearin had theretofore been appointed to make report of the sale of certain lands sold under an overdue tax proceeding by M. H. Gladden, special commissioner, and bought by the State of Arkansas. Hearin himself now reports that Gladden did, on the 1st to 15th days of January, 1883, offer the lands for sale described in the report of sale, and he attaches to his report, as exhibit "A" thereto, a report which Gladden had himself prepared, showing the lands which he had sold to the State and which had not been redeemed. This report of Hearin was sworn to before the judge of the court where the proceeding was pending, on October 9, 1891. The court found that this exhibit "A" was the report made up by Gladden himself showing the lands sold to the State, and the specific finding is made that this sale to the State was never reported by Gladden to the court or confirmed by the court. The court found Hearin's report to be correct and confirmed it, and vested in the State title to the lands there described. The land in suit did not appear in that report as having been sold to the State.

The effect of this confirmation was to complete the sale and to vest title to the lands sold to the State in the State; but the sale was not complete and the title did not vest until there had been a confirmation thereof. *St. L. I. M. & S. R. Co.* v. *Greeson*, 81 Ark. 170; *Kelley* v. *Laconia Levee Dist.*, 74 Ark. 202. As no confirmation of the sale of the land in suit is shown, it follows that the State did not acquire the title as the result of that suit.

We have therefore the following record. Under section 7 of the overdue tax act it was made the duty of the court to inquire whether the tax sales or forfeitures were sufficient in law to vest title in the State, and the direction was given by the act that, if the court found that no title had passed to the State by virtue of the tax sale, the court should proceed as if no forfeiture had taken place, in which event section 8 provided that the court should make an order requiring the assessor of the county to assess the lands for the years during which the taxes were not paid. This assessment was made, and taxes amounting to $12.03 were assessed against the land in suit. This proceeding necessarily operated to set aside the sale for the taxes of 1868, the court having expressly found that the sale for the taxes of that year was void. As there has been no confirmation of a sale to the State, the State did not acquire title as a result of that proceeding; and we think the inference fairly deducible from the records quoted is that the land was in fact redeemed from the decree of sale, as it might have been under the act.

The Land Commissioner's deed purports to be based upon a sale to the State for the taxes of 1868, and, as the State is not shown to have had any other title to the land, that deed conveyed no title, because the sale for 1868 was expressly canceled by the overdue tax decree.

It is stipulated that the Land Commissioner would testify that the land in litigation does not appear in the list of lands certified to his office as having been sold and confirmed under the overdue tax proceedings.

The law required a list of the lands sold to the State to be filed with both the Auditor and the Commissioner of State Lands. But the list filed with the Land Commissioner was the only list which the law required to be recorded. Permanent records were provided in which the Land Commissioner recorded the lists coming from all the countiees, and the land in litigation does not appear in the list as recorded from Union County, where the land was, and is, situated. The Land Commissioner was, and is, the State's land agent, and these records which he was required to make, and still keeps, are the records preserving the evidence of the State's title to lands acquired through the overdue tax proceeding.

To summarize: There is no writing anywhere to indicate that the report of the commissioner showing the land in litigation was ever sold and confirmed to the State, except the ambiguous record found in the Auditor's office. The court records relating to this overdue tax proceeding are intact, and no court order shows any confirmation of any list of lands sold to the State. The only report confirmed was the financial report of the commissioner. The recital of the certificate to the list of lands in the Auditor's office can be read to include the land in litigation; but the certificate identifies that list, which it designates as the list of lands on designated pages of the chancery court records, which we know to be the decree of sale including all the lands embraced in the suit, many of which, we know were never sold to the State, from the fact that the financial report of the commissioner referred to shows that he had on hand a large sum of money derived from the sale of lands to individuals, who paid him the amounts of their bids at his commissioner's sale. In addition, there must necessarily have been many tracts of land- redeemed either before the sale or within the period allowed for redemption. Yet this list, referred to as being the list of lands

sold and confirmed to the State, includes all of the lands embraced in the decree.

In addition, the Land Commissioner's records in which these lists were required to be recorded do not contain the land in litigation; and, when the Commissioner undertook to sell the State's title, he recited in his deed the forfeiture to the State for the taxes of 1868 as the basis of the State's title.

We also have the solemn adjudication of the court in which the overdue tax proceeding had been had that there had never been any confirmation of the report of the commissioner showing the lands sold to the State; and the decree of confirmation which adjudged there had been no prior confirmation, and which described the lands reported as sold to the State, did not include the land in litigation.

From all these facts we conclude the land was never sold to the State; but, if so, there was a redemption within the time allowed by law.

The court found that appellee was the owner of the land by an unbroken chain of conveyances of the original title, and canceled the commissioner's deed as a cloud upon that title. We do not stop to decide questions raised in regard to that finding, as it appears that appellee, and his predecessors in title, had at least color of title, and had paid the taxes for seven consecutive years thereon before the institution of this suit, and this makes a title, unless during that time the land was owned by the State. Sec. 6943, C. & M. Digest.

Appellant paid taxes after the institution of this suit, and thus broke the continuity of the payments; but there had been seven payments by appellees and his predecessors in title before this break in the payments occurred.

It follows, from what we have said, that the decree of the court below should be affirmed, and it is so ordered.

HART, J., (concurring.) I concur in the opinion affirming the decree of the court below, on the ground

that a presumption should be indulged that the land had been redeemed from the decree of sale, because of the tax payments which the record shows were made, and in support of that view I rely on the doctrine announced in the cases of *Wallace* v. *Hill*, 135 Ark. 353; *Lloyd* v. *Thornton*, 147 Ark. 247, and *Carter* v. *Stewart*, 149 Ark. 189.

The facts in regard to the payment of taxes are as follows: There was a conveyance of the land to Jerry Tatum in 1878, and the taxes were assessed in his name for the year 1882, and in the name of his estate for the years 1883 to 1888, inclusive, and in the name of Louise Tatum for the years 1889 to 1892, inclusive; and the taxes from 1893 to 1896, inclusive, were assessed in the name of B. W. Reeves; and the taxes for all these years were paid, although the records extant do not show by whom the payments were made, and the relationship between Jerry Tatum and Louise Tatum does not affirmatively appear. Reeves acquired his title by the foreclosure of a deed of trust executed in 1881 by Jerry Tatum to Reeves & Gresham; and Reeves conveyed to Kinard, who paid the taxes for the years 1897 and 1898. From 1897 the records show by whom the taxes were paid. Payments from 1899 to 1903, inclusive, were made by J. Z. Robertson, in whose name the lands were assessed. The record does not show under what claim of title Robertson paid; but in 1904 Kinard resumed the payment of taxes; and thereafter the taxes were either paid, or were redeemed after having been sold for nonpayment, by persons in the Kinard chain of title.

The taxes were paid during the time when, under the law, redemption could have been made, and, in view of the payments of taxes set out above, I am of opinion that a presumption should be indulged that the right of redemption had been exercised.

WOOD, J., dissents.