LANEY v. MONSANTO CHEMICAL CO.

5-2326                                           348 S. W. 2d 826

Opinion delivered May 22, 1961.

[Rehearing denied, September 19, 1961.]

646

*Gaughan & Laney*, for appellant.

*C. M. Martin, Lamar B. Smead, Shackleford & Shackleford*, for appellee.

GEORGE ROSE SMITH, J. These two cases, consolidated for trial in the court below, involve the title to a forty-acre tract of land that was formerly owned by Charles Richardson, the parties' common source of title, who died in 1935. The land was sold for nonpayment of taxes in 1925, and two years later a tax deed was executed and delivered to the purchasers, George W. Hays and J. B. Newton.

There are three sets of claimants to at least some interest in the land. First, the heirs of the tax title purchasers, Hays and Newton, assert a claim of absolute ownership on the basis of two years actual possession under the tax title. Ark. Stats. 1947, § 34-1419. Second, F. A. and B. T. Laney claim an undivided one-eighth interest in the minerals through deeds which they obtained in 1936 from the heirs of Charles Richardson. Third, Feldt & Maytag, a partnership, claim the surface ownership and an undivided one-eighth interest in the minerals through a deed which they obtained in 1957 from the heirs of Charles Richardson. The other party to the suit, Monsanto Chemical Company, is merely a stakeholder having in its possession oil royalties that are payable to the true owners of the land.

One of the suits in the court below was brought by the Laneys to quiet their title to the mineral interest asserted by them. The other was brought by the Hays and Newton heirs for an accounting of the oil royalties held by Monsanto. After an extended trial the chancellor held that Hays and Newton, despite the invalidity of the 1925 tax sale, had acquired absolute title by means of actual possession for a period of more than two years. The Laneys and Feldt & Maytag have both appealed from the decree quieting title in the Hays-Newton

heirs. The contentions of the two sets of appellants present different questions and must therefore be discussed separately.

We consider first the Laneys' appeal. Here the decision ultimately turns upon the extent to which a tax title purchaser can assert adverse possession as a result of the original owner's tenant having attorned to the tax title purchaser after the tax sale.

The essential facts are these: Charles Richardson, the common source of title, bought 240 acres of land in 1919 and later built a small house upon the 40-acre tract now in dispute. In 1927, when Hays and Newton received their tax deed, the house was occupied by Richardson's tenant, Wyley Bass, who testified that he was in actual possession of the land from 1927 until 1933.

Charles Richardson's son, Grover Richardson, was a principal witness for the Hays-Newton heirs. Grover testified that he and his father visited Bass soon after Charles learned about the tax forfeiture. According to Grover his father then said to Bass, ''Well, I learned today that this land went for taxes.'' Grover said that he and his father next went to see a prospective purchaser of the land, and the elder Richardson explained that he would be unable to sell the property. Bass, also testifying for the appellees, confirmed the conversation in which Charles Richardson told him about the tax forfeiture. Bass stated that later on Newton, one of the tax title purchasers, told Bass that he had bought the property and directed Bass to pay the rent to Newton's agent. Bass said that he accordingly paid rent, at the rate of five dollars a month, to Newton's agent until he left the land in 1933.

The appellees, in contending that their ancestors had actual possession of the property from 1927 until 1933, insist that after the tenant's attornment to Newton the tenant's possession must be deemed to have been that of Hays and Newton. This argument is not quite sound, however, for the reason that there is no proof that Charles Richardson knew or had notice that his tenant had attorned to the holders of the tax deed. Hence there

is no showing that the true owner was put on notice that the two-year statute was running in favor of the tax title grantees.

An almost identical situation was presented in *Cotton* v. *White,* 131 Ark. 273, 199 S. W. 116, where we rejected the tax title purchaser's claim, saying: "As a further source of title, appellant relies upon the two years' statute of limitations. He testified that he took possession of the above tract in 1910 by going down there and finding a Mr. Patrick in possession and cultivating the land. Patrick told him that he had been a tenant of the original owner. Appellant told Patrick that he had bought the land at tax sale and wanted possession, and Patrick agreed to hold under appellant and pay rent to him provided certain improvements were made, and Patrick remained on the land as appellant's tenant for three years. Was Patrick's possession as tenant of appellant adverse to the holders of the legal title?

"The element of notoriety must be added to adverse possession before it can ripen into title by limitation. A bare agreement on the part of one in possession of land to attorn to another, who claims it, is insufficient, in the absence of notoriety, to render the latter's possession adverse to a third party. *Johnson* v. *Elder,* 92 Ark. 30, 121 S. W. 1066. There is no evidence in this case that notice was in any manner brought home to appellee, or to his predecessors in title, that Patrick was holding adversely to him or them. Under these circumstances, the claim of title by adverse possession must fail."

Charles Richardson no doubt had notice that Bass remained in possession from 1927 until 1933, but that occupancy was too short to vest title under the seven-year statute. Ark. Stats., § 37-101. And, under the *Cotton* case, the two-year statute did not run against Richardson, for he had no notice that Bass had attorned to Newton. It follows that the Laneys are entitled to prevail, for the Richardson heirs still had title when they conveyed a one-eighth mineral interest to the Laneys in 1936.

The other appellants, Feldt & Maytag, are in a less favorable position, as they did not obtain a deed from the Richardson heirs until 1957. The weight of the evidence shows that the land was allowed to return to its natural state in about 1936 and was still wild and unimproved at the time of trial. The Hays and Newton heirs paid the taxes, under color of title, from 1935 through 1946 and from 1948 through 1958, thereby acquiring title before the conveyance to Feldt & Maytag. Ark. Stats., § 37-102; *McFarlane* v. *Morgan,* 157 Ark. 97, 248 S. W. 257. The Laneys were not affected by the tax payments, however, for their mineral interest had already been severed and is therefore not deemed to have been included in the description under which the tax payments were made. *Claybrooke* v. *Barnes,* 180 Ark. 678, 22 S. W. 2d 390, 67 A. L. R. 1436.

As to the Feldt & Maytag interest the decree is affirmed; as to the Laney interest the decree is reversed and the cause is remanded for the entry of a decree consistent with this opinion.

GEORGE ROSE SMITH, J., on rehearing. In asking for a rehearing Feldt & Maytag insist that they have a valid title to a one-eighth interest in the minerals (or at least in the oil) despite the payment of taxes by the Hays and Newton heirs.

The argument is to this effect: In 1919 Charles Richardson executed an oil, gas, and mineral lease upon his 240 acres, reserving a one-eighth royalty in all oil produced by the lessee. In 1921 the lessee drilled a producing oil well upon a different forty-acre tract from the one involved in this case, and oil has been produced from that well ever since. In 1957 the Richardson heirs conveyed a one-eighth interest in the minerals to Feldt & Maytag.

It is now contended that the continuing production of oil from one forty-acre tract in the lease had the effect of vesting in the lessee constructive possession of all the minerals (or perhaps of all the oil) throughout the 240 acres covered by the lease. This constructive

possession would, it is argued, inure to the benefit of the Richardsons as lessors. Hence, the appellants say, the Hays-Newton tax payments could not amount to constructive possession of the Richardsons' one-eighth mineral interest, for the Richardsons already had constructive possession by reason of their lessee's production upon an adjacent forty.

We are unable to agree with the basic premise in the appellants' argument, that a lessee's production of oil from one tract within a lease amounts to constructive possession of all the oil throughout the leasehold. This view was recently taken in Kentucky, *Diederich* v. *Ware*, Ky., 288 S. W. 2d 643, but we regard the contrary decisions as sound. *Sanford* v. *Alabama Power Co.*, 256 Ala. 280, 54 So. 2d 562; *Piney Oil & Gas Co.* v. *Scott*, 528 Ky. 51, 79 S. W. 2d 394; *Davis* v. *Federal Land Bank*, 219 N. C. 248, 13 S. E. 2d 417; *Dartmouth, Earl,* v. *Spittle*, 24 Law Times N. S. 67. Our present conclusion is in harmony with our holding in *Brizzolara* v. *Powell*, 214 Ark. 870, 218 S. W. 2d 728, and, by analogy, with the rule that the lessee's development of part of the leasehold does not excuse his failure to develop the rest. *Ezzell* v. *Oil Associates*, 180 Ark. 802, 22 S. W. 2d 1015; *Standard Oil Co.* v. *Giller,* 183 Ark. 776, 38 S. W. 2d 766.

Both the petition for rehearing filed by Feldt & Maytag and that filed by the Hays-Newton heirs are denied.