The Honorable Charlie Daniels Commissioner of State Lands State Capitol Building Little Rock, AR 72201
Dear Commissioner Daniels:
This is in response to your request for an opinion concerning the validity of certain mineral interest tax deeds in light of the Arkansas Supreme Court's decision in Dawdy v. Holt, 281 Ark. 171,662 S.W.2d 818 (1984), and Act 961 of 1985.
Specifically, you note that the Commissioner of State Lands is required to offer for sale tax delinquent mineral interests. A.C.A. 26-37-101, and A.C.A. 26-26-1110(b). Pursuant to this requirement, your office was holding many parcels of delinquent mineral interests certified thereto by the local counties, when the Supreme Court handed down its decision in Dawdy v. Holt, supra. In Dawdy, the Supreme Court held that a tax deed to mineral interests was invalid because the local county clerk maintained separate books for real estate assessments and mineral interest assessments. That decision was based upon a long line of cases starting with Sorkin v. Myers, 216 Ark. 908, 227 S.W.2d 958
(1950). In Sorkin, the court found that because the clerk's office listed the mineral interests in a separate book from the real estate records, and listed them alphabetically, it was only possible to look up the assessment of the mineral interest if the current holder's name was known. Otherwise it was necessary to look through the entire alphabetical listing of over four thousand names to discover the assessment. (The real estate listings were indexed by section, range, and township numbers; that is, it was possible to reference them by "land calls".) The court held that this difference in treatment of mineral interests and real estate violated due process of law stating: The explanation of administrative officers that an alphabetical arrangement is more convenient is not controlling. The minerals, being primarily an interest in the land, are severable only because the legislative authority has made them so; yet for taxing purposes they are so closely related to the realty that ownership identification and accuracy make it well-night imperative that the mineral listing be subjoined to the land assessments. (Emphasis original.)
Thus, the concept of "subjoinder" became a prerequisite to the validity of tax deeds transferring mineral interests. The court upheld the requirement in several subsequent cases. See, Stienbarger v. Keever, 219 Ark. 411, 242 S.W.2d 713 (1951); Davis v. Stonecipher, 218 Ark. 962, 239 S.W.2d 756 (1951); Adams v. Bruder, 275 Ark. 19, 627 S.W.2d 12 (1982); and Walker v. Western Gas Company, 5 Ark. App. 226, 635 S.W.2d 1 (1982); and Garvin [Garvan] v. Potlatch Corp., 278 Ark. 414, 645 S.W.2d 957 (1983). In the cases cited above, the mineral interests were not all listed by section, range township, etc.
In two later cases, the court was faced with the question of whether "subjoinder" was required where the mineral interests were listed separately, but also were listed by section, township, and range, so as to be identifiable by tract. The Court of Appeals in Blackburn v. Cline, 8 Ark. App. 108, 650 S.W.2d 588 (1983), recognized the force of the appellant's argument that listing by section, township, and range is sufficient to satisfy due process, but felt constrained to hold otherwise because of Garvan. The next decision was Dawdy, which held that "subjoinder" was required even though due process was otherwise satisfied, stating: The appellants also point out that, unlike the case in Sorkin, the assessment method used did not deprive the taxpayer of due process of law, obscure the information from the taxpayer, prejudice the taxpayer, or burden an easy determination by an owner of his tax status at a given time. our cases have taken a clear direction for years in this matter and if any change is needed, as the appellants suggest, it is a matter for the legislature.
281 Ark. at 174.
The court thus refused to recognize the due process distinction, inviting the legislature instead to remedy the situation. That invitation was accepted, as evidenced by Act 961 of 1985. That act is now codified at A.C.A. 26-26-1112, and provides as follows: County assessors may maintain separate records for severed mineral interests if the records are maintained by legal description of the surface estate in the same manner as records of the estates are maintained.
The emergency clause of the act provides in pertinent part: Emergency. It is hereby found and determined by the General Assembly that the Supreme Court has ruled that maintaining separate tax assessment records for severed mineral interests and surface interests contravenes present law; that many county assessors do maintain separate records for severed mineral interests; that it is an unreasonable burden to require the records of severed mineral interests to be subjoined to the tax records of the surface estates; and that this Act is immediately necessary to allow the maintenance of such separate records.
You note that it appears doubtful that Act 961 of 1985 can cure defective assessments of mineral interests certified to the Commissioner of State Lands prior to the Act's effective date in 1985, and ask whether, with this knowledge, your office should continue to offer for sale tax delinquent mineral interests certified to you under the defective procedure, or whether you should cease such sales until such time as further legislation clarifies the issue. Your underlying legal question, is whether Act 961 of 1985 can cure defective assessments of mineral interests which occurred prior to the act's effective date, so as to render resulting tax deeds valid.
This question will depend upon whether the act has retroactive application, and was intended by the legislature to cure these defective tax deeds. It is possible that Act 961 of 1985 was intended as a "curative act", fashioned so as to cure the defective tax deeds such as the one in Dawdy. The term "curative act" was defined in Carle v. Gehl, 193 Ark. 1061 (1937), as "one intended to give legal effect to some past act or transaction which is ineffective because of neglect to comply with some requirement of law (and which is) necessarily retroactive."193 Ark. at 1064. It is defined at Sutherland, Statutory Construction, 41.11 as "a statute passed to cure defects in prior law, or to validate legal proceedings, instruments, or acts of public and private administrative authorities." The rule applicable to curative acts was stated in Green v. Abraham, 43 Ark. 420
(1884) as follows: If the thing wanting, or failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act which the Legislature might have made immaterial by subsequent law.
43 Ark. at 423, 424, citing Cooley's Const. Lim's., 4th Ed. at 464.
Thus, it appears that the legislature could enact a "curative act" and cure the defective assessment, thereby rendering the tax deeds valid. The topic is addressed in Sutherland, supra, 41.17, wherein it is stated: Apart from questions having to do with tax assessment and levy, tax sales and tax deeds have also been the subject to curative acts. Although the power to validate tax sales is generally held to be more limited, certain defects may be cured, and tax deeds may be validated provided no constitutional defects existed in the proceedings out of which the deeds arose.
Thus the legislature cannot attempt to cure constitutional defects. "Where errors in assessments are such that the taxpayer cannot discover upon what property he is taxed, the amount of the tax, or is denied notice and a hearing, procedural due process of law is violated, and a curative act cannot make the assessment good." Sutherland, supra at 41.17. The legislature has not attempted this, however, as the act requires that the assessment be listed by section, township, and range, and in my opinion these facts would render the process constitutional.
Additionally, the legislature, by passage of a curative act, cannot impair vested rights. Green v. Abraham, supra. The only "vested right" a party might have in this instance is the right to sue on the defective assessment and to have the deed declared invalid because of the defect, (even though as a substantive matter, he failed to pay his taxes). The concept was discussed in Pelt v. Payne, 90 Ark. 600 (1895), wherein it was stated: It has also been urged that this act is unconstitutional and void, for the reason that it was beyond the power of the Legislature to cure and make valid a void deed. We think that this contention is not based on sound principles, for it is settled law that when a deed or other conveyance is invalid by reason of the failure of the parties thereto to conform to some formality imposed by the statute, the Legislature, which imposed the formality, may by a subsequent act cure the defect and give the deed such effect as the parties thereto intended that it would have at the time of its execution. `A party,' says Judge Cooley, `has no vested right in a defense based on an informality not affecting his substantial equities.' (citation omitted.)
With the knowledge that the legislature can "cure" defective mineral interest tax deeds for interests which were forfeited prior to the curative act's effective date, the question for resolution becomes whether this is in fact what the legislature intended, and whether this is in fact what has been accomplished. The act does not state that it is to have retroactive effect. It does not even state that its purpose is to remedy defective tax deeds. The language of the emergency clause, which often where legislative intent may be gleaned, states merely that the court has held that separate assessment records "contravene present law", and that requiring "subjoinder" of assessments by the counties would be overly burdensome. Therefore the act shall operate so as not to require "subjoinder". Did the legislature intend to cure defective tax deeds? Surely it had this issue in mind, given the fact that the act was passed in such close proximity to the Dawdy decision, and the Dawdy decision invalidated a tax deed. On the other hand, if the legislature had intended the act to have retroactive application so as to render tax deeds valid, it could easily have said so.
In my opinion, the question of whether Act 962 of 1985 is a "curative act" with retroactive application is an extremely close one. It is my opinion, however, that there is insufficient evidence in A.C.A. 26-26-1112 of a legislative intent to retroactively "cure" defective mineral interest tax deeds arising under the formerly unauthorized procedure. Accordingly, it is my opinion that such deeds are still subject to challenge.
Given this state of the law, you inquire as to whether your office should continue to offer these mineral interests for sale. This question calls for legal advice which this office does not, as a general matter, extend in the context of a formal legal opinion. This is a decision to be made by you upon the advice of your appointed legal counsel.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.