WEAVER *v.* GILBERT.

4-8801                    218 S. W. 2d 353

Opinion delivered March 14, 1949.

*Chas. F. Cole,* for appellant.

*W. D. Murphy* and *M. F. Highsmith,* for appellee.

MINOR W. MILLWEE, Justice. A. B. Weaver employed G. A. Gilbert in the operation of a stave mill at Charlotte in Independence county early in 1927. Under the original parol employment agreement Gilbert was to receive a commission of five per cent of the profits of the business. Losses occasioned by a flood in the spring of 1927 resulted in the termination of the original employment contract and the reorganization of the business as a partnership composed of A. B. Weaver and three sons. Gilbert continued to work for the partnership for wages which were raised or lowered according to economic conditions.

In December, 1933, A. B. Weaver & Sons sold 160 acres of unimproved land to G. A. Gilbert and executed a bond for title which provided for execution of a warranty deed to Gilbert upon payment of his note for $400

due in four equal annual installments beginning November 1, 1934. Shortly after the purchase, Gilbert took possession of the land, put out an orchard, built a home and outbuildings, and resided on the property with his family until his death in 1946. His widow and heirs have remained in possession and control of the property since his death. Gilbert and his heirs have also paid the taxes on the land since 1933.

A. B. Weaver died in 1945. Plaintiffs, who are his heirs at law, filed this suit on November 12, 1947, against the widow and one son of G. A. Gilbert, deceased, to quiet title to the 160-acre tract and to restrain defendants from tearing down and removing certain improvements from the land. The complaint alleged title and possession of the land in plaintiffs. The other heirs at law of Gilbert intervened and were joined as defendants in the suit.

In their answer, defendants alleged their continuous possession, payment of taxes and improvements under the bond for title. It was further alleged that although the $400 note had been fully paid by G. A. Gilbert, the plaintiffs and A. B. Weaver had failed and refused to execute a deed as provided in the bond for title. The prayer of the answer was that plaintiffs be required to execute a warranty deed conveying the lands to defendants.

After a hearing the trial court found that defendants and G. A. Gilbert had been in continuous possession, made extensive improvements and paid the taxes on the lands since 1933 under the bond for title, but that the $400 note executed by G. A. Gilbert had not been paid and that there was due thereon $746. It was further ordered that upon payment of this amount by the defendants within 30 days, plaintiffs should execute and deliver a warranty deed to the property as provided in the bond for title; otherwise the title to the lands would be quieted in plaintiffs. Pursuant to the court's order, defendants deposited the sum declared due with the clerk of the court. Both parties appealed and plaintiffs are the appellants here.

It is undisputed that G. A. Gilbert and the defendants have been in possession and control of the lands and paid the taxes since 1933; and that improvements of the value of more than $2,000 have been added with full knowledge and acquiescence of A. B. Weaver and the plaintiffs. The preponderance of the evidence also supports the court's finding that the $400 note was never paid.

G. A. Gilbert was a faithful employee of A. B. Weaver & Sons during the time he occupied the lands and a close personal and business relationship existed between them. It is not shown that the Weavers ever demanded payment of the $400 note nor is there proof of a specific offer of payment by G. A. Gilbert. After Gilbert's death, and before the institution of this suit, Mrs. G. A. Gilbert and a son offered to pay the note in exchange for a deed to the property, but this offer was refused by plaintiffs. Defendants attempted to show payment of the note through commissions due G. A. Gilbert under the 1927 employment agreement. This agreement was terminated six years prior to the execution of the note and bond for title and the evidence is insufficient to show that Gilbert ever became entitled to commissions under the contract.

Plaintiffs contend that G. A. Gilbert abandoned any claim to the lands under the bond for title. This contention is based on the testimony of Ransom Weaver, a son of A. B. Weaver, deceased, who stated that in 1936 or 1937 one of his brothers withdrew from the partnership and G. A. Gilbert became alarmed over the fact that this brother might select the 160-acre tract occupied by Gilbert in a division of assets of the partnership. The witness then testified: "Q. Did you all have a conversation about the Bond of Title? A. Yes, he had given that up, and me and my brother promised him he could live there a lifetime if he would keep it up and pay the taxes." This testimony, if competent, was insufficient to overturn or vary the terms of the bond for title which remained at all times in the possession of Gilbert and the defendants while the note remained in the possession of

A. B. Weaver and the plaintiffs. Valuable improvements were made on the property several years after the alleged conversation with the full knowledge of A. B. Weaver and the plaintiffs. All the attendant facts and circumstances contradict the conclusion of the witness that G. A. Gilbert had "given up" the bond for title in 1936 or 1937.

Since the early decision of *Smith* v. *Robinson,* 13 Ark. 533, this court has consistently held that the legal effect of the execution of a bond for title is to create the relationship of mortgagee and mortgagor between the vendor and vendee. In *Higgs* v. *Smith,* 100 Ark. 543, 140 S. W. 990, the court said: "It has been settled by many decisions of this court that, where the owner sells lands to another and executes a bond for title, 'the effect of the contract is to create a mortgage in favor of the vendor, upon the land, to secure the purchase money, subject to all the essential incidents of a mortgage, as effectually as if the vendor had conveyed the land by an absolute deed to the vendee and taken a mortgage back to secure the purchase price.' *Smith* v. *Robinson,* 13 Ark. 533; *Moore* v. *Anders,* 14 Ark. 633, 60 Am. Dec. 551; *Hardy* v. *Heard,* 15 Ark. 184; *Harris* v. *King,* 16 Ark. 122; *Lewis* v. *Boskins,* 27 Ark. 61; *Holman* v. *Patterson,* 29 Ark. 357; *McConnell* v. *Beattie,* 34 Ark. 113; *Robertson* v. *Read,* 52 Ark. 381, 14 S. W. 387; *Strauss* v. *White,* 66 Ark. 167, 51 S. W. 64; *Stubbs* v. *Pitts,* 84 Ark. 160, 104 S. W. 1110.

"It has also been uniformly held that the remedies of the vendor, after failure of the vendee to pay in accordance with the stipulation of the contract, are to proceed at law for recovery of the debt, or to sue to recover possession for the purpose of collecting rents and profits, or to proceed by a bill in equity to foreclose the equity of redemption and sell the lands for the payment of the debt, and also that the vendee has the right to proceed by bill in equity to redeem. *Smith* v. *Robinson, supra.*" See, also, *Williams* v. *Baker,* 207 Ark. 731, 182 S. W. 2d 753; Jones on Arkansas Titles, § 72.

At common law the vendor, under a bond for title, could maintain ejectment if the vendee failed to pay the purchase price. This rule was changed by § 116 of our code (Ark. Stats. (1947), § 27-1121), which permits equitable defenses to be interposed at law; and the vendor can no longer maintain ejectment, if the vendee sets up a defense which would entitle him to have specific performance of the agreement to convey as provided in the bond for title. 19 C. J., Ejectment, p. 1083; *Gates* v. *Gray,* 85 Ark. 25, 106 S. W. 947, 122 Am. St. Rep. 19; *Cavalli* v. *Allen,* 57 N. Y. 508; *Morton* v. *Dickson,* 90 Ky. 572, 14 S. W. 905.

It is also the rule that equity jurisdiction to quiet title, independent of statute, can only be invoked by a plaintiff in possession holding the legal title, the remedy at law being otherwise adequate. However, if a plaintiff not in possession institutes a suit to quiet title and the defendant files a cross-bill founded on matters clearly cognizable in equity, this supplies any defect in jurisdiction and places the court in possession of the whole cause and imposes upon it the duty of granting relief to the party entitled thereto. *Gibbs* v. *Bates,* 150 Ark. 344, 234 S. W. 175.

So here, G. A. Gilbert, under the bond for title, became the mortgagor and the owner of the equitable title to the land which was such an interest as would descend to his heirs upon his death. *Hill* v. *Heard,* 104 Ark. 23, 148 S. W. 254, 42 L. R. A., N. S. 446, Ann. Cas. 1914C, 403. The legal title to the land remained in A. B. Weaver and sons to secure the payment of the purchase money. G. A. Gilbert, and his heirs after his demise, had the right to redeem and to acquire the legal title upon the payment of the purchase money. When defendants by their answer asked for affirmative relief by way of specific performance of the terms of the bond for title, the court acquired jurisdiction to grant such relief even though plaintiffs failed to prove possession as alleged in their complaint.

The trial court correctly found the note unpaid, and the decree granting specific performance of the

terms of the bond for title upon payment of the indebtedness amounted to an allowance of defendants' right to redeem from the mortgage. It follows that the court properly determined the issues and the decree is affirmed both on direct and cross-appeal.