SCHUMAN *v.* CERTAIN LANDS.

5-193                          264 S. W. 2d 413

Opinion delivered February 8, 1954.

*U. A. Gentry,* for appellant.

*J. Bruce Streett,* for appellee.

*Davis & Allen, Keith & Clegg* and *McKay, McKay & Anderson, Amicus Curiae.*

WARD, J. The question considered here relates to the confirmation of tax deeds purporting to convey undivided interests in oil, gas and minerals under land, where such interests had been previously severed from the fee title to the land and had so forfeited for non-payment of taxes. No questions of fact are involved but the pleadings present a question of law not heretofore decided by this court.

*Pleadings.* On September 14, 1951, Manie Schuman and eight other persons filed a petition in the Chancery Court of Ouachita County, under the provisions of Ark. Stats., § 34-1918 *et seq.,* alleging; that they had acquired through various tax sales certain mineral interest in and under certain lands; that the lands, or a portion of them, were occupied by the owners of the fee, subject, however, to the mineral interest which had been conveyed and severed from the freehold; that no one was in actual possession of said lands who was claiming mineral interest adversely to the plaintiffs, and; that said plaintiffs had paid the taxes on said mineral interest for more than three years in succession. Tax receipts were filed in court, and attached to the petition, as exhibits, were 25 deeds from the Commissioner of State Lands, some made to individual plaintiffs and some to two or more, showing the mineral interest conveyed and the year for which said interest forfeited for non-payment of taxes, but not showing in whose name the forfeitures occurred. The petition was verified by Manie Schuman. The prayer of the petition was that the sale of said land be confirmed and the title acquired by virtue of said deeds be forever quieted and confirmed.

Filed with the petition was the affidavit of two disinterested parties, presumably pursuant to Ark. Stats., § 34-1920, stating in substance; that they were familiar with the lands and knew of their personal knowledge that there were no adverse claimants of the mineral interest, and; that, though the surface of the lands, or a portion thereof, was occupied by various persons, none of them were claiming mineral interest adverse to petitioners.

Notice of the filing of the petition for confirmation of title to the mineral interest as described in the petition was published for six consecutive weeks as is provided for in Ark. Stats., § 34-1919.

On November 2, 1951, H. D. Robertson and Vera Schroeder, claiming to own certain royalty and mineral interest in and under the said lands, filed their demurrer to the petition on the ground that same did not state facts sufficient to constitute a cause of action. After numerous other motions and orders the said demurrer came on for hearing on March 9, 1953, it being agreed by all parties that the demurrer would be treated as if filed by each of the respective attorneys or their clients. The demurrer was sustained by the trial court on the ground that the complaint did not state a cause of action. Petitioners refused to plead further, the complaint was dismissed and this appeal follows.

The only question before this court is: Did the trial court commit error in sustaining the demurrer to petitioners' complaint?

It is pointed out by appellants that the demurrer was sustained for three reasons or on three grounds, and then it is urged, supplemented by citations to decisions of this court, that no one of the three reasons or grounds is valid or sufficient. However, because of the conclusion hereafter reached it becomes unnecessary to consider appellants' contentions, because it is elemental that if the trial court was right for any reason it must be affirmed regardless of the reasons given by it.

It is our opinion that appellants' petition, considered alone or together with the notice and affidavit, did not state a cause of action for confirmation of title to undivided interests in mineral rights, for the reason that the statutes proceeded under do not apply in this situation.

The basic statute under which appellants state this action was brought, Ark. Stats., § 34-1918, was passed in 1881 amending the original statute adopted in 1836, shown in Revised Statutes, Chapter 149. The only dif-

ference between the two statutes is that the amendment substituted the words "County Clerk, or by the State Land Commissioner" for the words "by the Auditor of State" used in the original statute. It would serve no useful purpose to set out either or both of said statutes because it is obvious that, for the purposes of this discussion, they have exactly the same meaning. It will be noted that said § 34-1918 as well as all other sections relied on here used the word "land" and that nowhere are mineral rights mentioned or referred to.

There are convincing reasons that lead us to the conclusion that the legislature never intended to make said statutes available for the confirmation of undivided interests in oil, gas or other minerals. It is common knowledge that in 1836 there were no oil or gas operations in Arkansas and that in particular oil and gas were perhaps not in production extensively anywhere in the United States. This being true it is not reasonable to suppose that the legislature in 1836 intended for the word "land" to include undivided interest in oil and gas. By decisions of this court in the case of *Missouri Pacific Railroad Co; Thompson, Trustee,* v. *Strohacker,* 202 Ark. 645, 152 S. W. 2d 557, and *Carson* v. *Missouri Pacific Railroad Company, Thompson, Trustee,* 212 Ark. 963, 209 S. W. 2d 97, 1 A. L. R. 2d 784, it was established that the meaning of a written word must be limited to its meaning as of the date it was employed or used.

A strong indication, at least, of what our decision should be here is found in the case of *Brizzolara* v. *Powell,* 214 Ark. 870, 218 S. W. 2d 728. In that case Ark. Stats., § 37-102, which provides that unimproved and unused *land* shall be deemed as held in possession of the person who pays the taxes if he has color of title, was construed, and it was held that the word "land" did not include oil, gas or mineral rights. The pertinent language is: "The legislature undoubtedly had in mind the visible surface characteristics of land in its popular sense." It is significant that the statute construed in that instance was passed some 60 years after 1836 and about 18 years

after the enactment of the amending statute here relied on by appellants.

In any confirmation suit founded on possession the question of possession is, of course, a vital one. Many decisions of this court have definitely established a vast difference between possession of *land* and possession of *mineral* rights. In the case of *Bodcaw Lumber Company* v. *Goode,* 160 Ark. 48, 254 S. W. 345, 29 A. L. R. 578, the court said, after quoting from other authorities, that:

"The rule of those authorities is that the title to minerals beneath the surface is not lost by non-use or by adverse occupancy of the owner of the surface under the same claim of title, and that the statute can only be set in motion by an adverse *use* of the mineral rights, persisted in and continued for the statutory period." (Emphasis supplied.)

The holding in the above case was affirmed and the same rule was reaffirmed in different language in the case of *Claybrooke* v. *Barnes,* 180 Ark. 678, 22 S. W. 2d 390, 67 A. L. R. 1436. It was there said:

"Where there has been a severance of the legal interest in the minerals from the ownership of the land it has been held . . . that adverse possession of the land is not adverse possession of the mineral estate and does not defeat the separate interest in it. . . ."

\*　　\*　　\*　　\*

"So it may be taken as settled that the two estates, when once separated remain independent, and title to the mineral rights can never be acquired by merely holding and claiming the land even though title be asserted in the minerals all the time. The only way the statute of limitation can be exerted against the owner of the mineral rights or estate is for the owner of the surface estate or some other person to *take actual possession of the minerals by opening mines and operating the same.*"

We cannot agree with appellants' contention that it was error to dismiss the entire complaint because some

interests were included to which no defense was interposed. The record does show that some interest under some lands were not among those represented by any of the attorneys contesting the complaint, but the record also shows that all interests sought to be confirmed [in the one petition] were based on the same state of facts and governed by the same law and procedure. Therefore when the Chancellor became convinced that the petition [which had been questioned] did not state a cause of action it was his right and duty to dismiss it.

Affirmed.

George Rose Smith, J. (dissenting). I do not think that the cases relied upon by the majority support the conclusion now reached. In *Brizzolara* v. *Powell* we construed a statute that applied only to "unimproved and uninclosed" land. In holding that the statute did not apply to undivided interests in minerals we reasoned: "Since minerals within the earth are not susceptible of inclosure, we conclude that the statute does not apply to this species of property."

In the case at bar the statute refers simply to "land." It is elementary law that the ownership of land extends downward to the center of the earth and includes everything lying below the surface. For many years the State has levied taxes against mineral interests that have been separated from the surface ownership. Yet the court now holds that the State, after having acquired title to such interests by a tax sale, will not permit its vendee to confirm that title.

It seems to me to be most unfortunate that the majority have seen fit to extend the doctrine of *Missouri Pacific R. Co.* v. *Strohacker* to the case before us. There the court was attempting to ascertain the intent of the grantor in a private conveyance, and there was perhaps some plausibility in the assertion that he did not mean for the word minerals to include oil and gas. But I perceive no plausibility whatever in saying that our General Assembly, when it used the word land in 1836, had a conscious

and deliberate intent to include only those minerals that were then known to exist in Arkansas.

Nothing but mischief can result from today's decision, for a difficult and wholly unnecessary question of fact is being created in every case of this kind. Coal deposits, for example, were known to exist in Arkansas as early as 1818. Manganese, on the other hand, although well known as a mineral in 1836, was not discovered in Arkansas until a decade or more after that year. The majority would therefore attribute to the 1836 General Assembly an intention to include coal in the reference to "land" but to exclude manganese. Such a distinction seems to me entirely artificial. I think it plain that the scope of the confirmation statute was intended to be as broad as the scope of the taxing statute. The purpose of the law was to enable a purchaser to confirm the title he had acquired from the State. The meaning of the word "land," as a legal term, had been settled for centuries. We have said repeatedly that the legislature is presumed to use legal terms in their accepted sense. I cannot find a syllable in the 1836 statute to indicate that the General Assembly had in mind the untenable distinction now discovered by the majority.

I said a moment ago that a wholly unnecessary question of fact is being created. That is so for the reason that the only real grievance complained of by these appellees can be removed in a simpler and sounder manner. Their complaint is that when a tax title to, say, an undivided one-eightieth interest of the oil and gas in a certain tract is confirmed, the decree clouds the title of everyone else who owns a like interest in that tract. This difficulty is easily met by requiring the plaintiff to make his complaint more definite, as by stating the name of the person who owned the undivided interest at the time of its forfeiture or by resorting to some other description that would differentiate the various fractional ownerships. But the point cannot be raised by demurrer, for the descriptions used are legally sufficient. I would reverse the decree with directions that the demurrer be over-

ruled, leaving the appellees free to assert their grievance by a motion to make more definite.