Robert Montague ADAMS, Jr., and John W. ADAMS, Jr.,
Successor Trustees of R. M. Adams Trust *v.*
Louise Ann McNamara BRUDER et al

81-176                                     627 S.W. 2d 12

Supreme Court of Arkansas
Opinion delivered January 25, 1982

20

*J. Sky Tapp,* for appellants.

*Martin, Vater & Karr,* by: *Robert W. Vater,* for appellees.

JOHN I. PURTLE, Justice. Appellees brought suit in the Chancery Court of Franklin County, Arkansas, to set aside appellants' mineral tax deed and certain leases for oil and gas which had been executed by appellants. The issues were joined and the trial court granted appellees' motion for a summary judgment. On appeal the appellants argue the court erred because there were genuine issues of material facts to be decided by the court. We hold the chancellor was correct in granting the summary judgment.

In 1905 appellees' predecessor in title sold the land in question but reserved all the mineral rights. The taxes on the separate mineral rights were delinquent for the 1944 assessment. Appellants' predecessor in title acquired the mineral rights by paying the delinquent taxes. A deed was executed to appellants in 1948. The deed was duly recorded and appellants or their predecessors have paid the taxes up until the commencement of this suit in November of 1979.

The 1944 Franklin County listing of tax assessments for

mineral rights were kept in the property tax book. The mineral rights in question were described at Pt. SE SE S8, T9, R26. The tax, penalty and costs amounted to $3.85 but the transfer was recited in the tax sale deed as being in the amount of $4.20. The mineral assessments were not subjoined to the land taxes. Instead, the mineral rights were listed at random in another section of the tax record book. They were listed neither in alphabetical order nor by section, township and range. There were several other discrepancies in the listings, notices and collection of the taxes relating to these mineral rights.

Appellees never paid any taxes on the mineral rights in question. They simply did nothing until 1977 when they executed a gas and oil lease to Texas Oil and Gas Corporation. However, appellants as trustees had executed an oil and gas lease in 1949 which was assigned to Arkansas Western Gas Company. The lease was renewed and the property was pooled and unitized. Drilling for natural gas was commenced and completed in 1965. This well was not physically located upon the property described in the lease in question but was in section 5 which was a part of the unit into which this property had been pooled. A second producing well was completed within the unit but not upon the land in dispute.

Through the process of interrogatories the facts were developed in this case. There is no question but that the mineral rights were improperly listed and that the original tax sale was void. It would serve no useful purpose for us to list all of the imperfections in the process of handling the taxes on the mineral rights for the year 1944. So far as the facts are concerned they are undisputed in relation to the void tax deed. The appellants' argument is that the appellees should not be allowed to sit by and do nothing for 35 years and then come in and take over the property after oil and gas has been discovered. Although appellants allege there were genuine issues of material fact to be determined by the court, their argument is based upon the court's interpretation of the law. The appellants feel that the appellees slept on their rights and they should have been allowed to argue the defenses of limitations and laches in order to defeat the

appellees' rights to the property in question. We think the court was able to take these arguments under consideration with the facts presented to it at the time of the summary judgment.

The issue presented here has been previously considered by this court, and we think the case of *Sorkin* v. *Myers,* 216 Ark. 908, 227 S.W. 2d 958 (1950), is controlling. The facts are almost identical in *Sorkin* and the present case. In *Sorkin* the land commissioner had issued a tax deed for mineral rights. The mineral lease was not subjoined to the surface property. The assessor kept an alphabetical list of the owners of several interests in a separate book called "Leases and Royalties." In *Sorkin* we held that the mineral rights as they relate to forfeitures shall in all things be handled in the same manner as provided for real property. See also *Stienbarger* v. *Keever,* 219 Ark. 411, 242 S.W. 2d 713 (1951); *Smiley* v. *Thomas,* 220 Ark. 116, 246 S.W. 2d 419 (1952). We have held in cases too numerous to need citation that a defective tax forfeiture deed is void. *Sorkin* firmly held that mineral interests were severable only because the legislature had made it so. Also, it held that the mineral rights were so closely related to the realty that ownership identification and accuracy made it imperative that the mineral rights be subjoined to the land assessment. The *Sorkin* decision wound up with the following language:

> . . . our decision rests upon the proposition that the procedure legislatively intended was not followed. Instead, there was a course of well-intentioned administrative conduct that deprived the property owners of the process provided for assessing and selling. This means that the power to sell was lacking.

We do not mean to imply that mineral interests could never be ripened into a good title if the original deed was defective. We held in the case of *Claybrooke* v. *Barnes,* 180 Ark. 678, 22 S.W. 2d 390 (1929), that the only way the statute of limitations would run against the owner of the mineral rights is for the owner of the surface rights or some other person to take actual possession of the minerals by opening mines and operating same. In the case of *Laney* v. *Monsanto*

*Chemical Co.,* 233 Ark. 645, 348 S.W. 2d 826 (1961), we held that the drilling on one tract of land within a lease did not amount to constructive possession of mineral rights in other tracts within the lease. In *Laney* it was contended that continuing production of oil from a 40-acre tract had the effect of vesting constructive possession of the mineral rights throughout the 240 acres covered by the lease. The opinion is summed up with a sentence which states:

> We are unable to agree with the basic premise in appellants' argument, that a lessee's production of oil from one tract within a lease amounts to constructive possession of all the oil throughout the leasehold. ...

In the early case of *Woolfolk* v. *Buckner,* 67 Ark. 411, 55 S.W. 168 (1900), we dealt with a claim concerning a tax title and adverse possession, stating:

> ... There is only one way in which the owner can be dispossessed or disseised by an illegal tax sale, and that is by actual adverse possession. ... If the original owner of the legal title was in constructive possession because he had the legal title, how could the claimant under the void tax title have the constructive possession at the same time? To so hold would be to give to possession under a void tax title more legal effect than to possession under a valid legal title ...

In the case of *Eades* v. *Joslin,* 219 Ark. 688, 244 S.W. 2d 623 (1951), we dealt with the matter of adverse possession. The defense interposed was the equitable defense of laches. There we stated:

> ... plaintiff's title was of record; the Eades were depending on adverse possession; until their possession had ripened into title they had no title to lease or sell. We find no facts sufficient to make laches applicable as a defense in this case.

Had the appellants been given an opportunity to present additional evidence in support of their contentions the result would have been the same. Based upon precedent

24

the tax sale was obviously void. Also, based upon precedent, the appellants had not taken actual possession of the mineral rights by exercising physical control in some manner which would bring notice to the appellees and the public in general.

Affirmed.