The Honorable Bill Stovall, III State Representative and Speaker of the House 2324 Heber Springs Road West Quitman, Arkansas 72131-9426
Dear Mr. Speaker:
I am writing in response to your request for an opinion on two questions relating to severed mineral interests. Specifically, you have enclosed correspondence from a prosecuting attorney who has received several recent inquiries concerning oil and gas rights. He poses the following questions and relays the following information:
 1) Can a land owner, who owns the surface rights quiet title to the mineral interest which were severed from the property and sold by a tax deed pertaining to mineral interest only in the 1970s and if so what is the procedure?
 2) Can a non-surface owner quiet title to mineral interest received by tax deed in the 1970s and if so, what is the procedure?
 Factually, it appears that we have two types of property owners interested in quieting title to mineral interest. Those who own the surface rights and now wish to reclaim the mineral interest because they appear to have some substantial value, even though those mineral interests were severed from the property some 30 or 40 years ago. Type 2 seems to be a number of people who purchase mineral rights at tax delinquent sales and have simply been holding them hoping that they will some day have some value and have continued to pay taxes on the mineral interest. They have now been contacted by companies wishing to purchase their rights but are being told that because Arkansas law is unclear if they have good title from a tax deed, they must do a quiet title.
RESPONSE
In response to your first question, the answer will depend upon all the pertinent facts and circumstances. It is impossible to come to any definite conclusions because each case will turn upon its own facts. As an initial matter, a landowner owning surface rights would have to show some type of title to the mineral interests in order to successfully maintain an action to quiet title to the minerals. Title or possession of the surface estate alone is not sufficient. The strength of such a landowner's case will depend upon whether he or she can show legal title to the mineral interests and/or color of title and actual possession thereof for purposes of pursuing a quiet title action. This may prove difficult, depending upon the chain of title and on whether there has been any actual, continued production of the mineral interests. Even though a mineral interest tax deed issued in the 1970s is likely void due to invalid assessment procedures utilized under past practices (see discussion below), the beneficiary of this fact, absent actual production of the minerals, will likely be the person who held legal title to the mineral interests at the time of the tax sale or his heirs or grantees. I will summarize the law surrounding that issue below.
In response to your second question, in my opinion, again, the issue will depend upon all the facts and circumstances. The holder of a mineral interest tax-deed issued in the 1970s may have a difficult time quieting title to the mineral interests in light of the fact that such a tax deed is in all likelihood void, due to the invalid assessment procedures referred to above. It is possible, however, that the holder of a void tax deed might quiet title to the mineral interest on the theory of adverse possession if the tax-deed holder has been in sufficient possession of the minerals evidenced by actual production of minerals from the land in question for the requisite time period. Absent such production, any legal action may result in a judgment in favor of the prior mineral interest deed holder.
Finally, I must note that legal issues surrounding land titles, particularly titles to severed mineral interests, are inherently factual and will depend upon all the circumstances surrounding a particular transaction. I cannot come to any generally applicable conclusions that will fit every conceivable fact pattern. In addition, I am prohibited by statute from the private practice of law. A.C.A. § 25-16-701. The general conclusions reached in this opinion are therefore not offered, nor should they be interpreted, as any type of legal advice to private parties. Interested landowners and deed holders must consult private legal counsel for any needed legal advice.
Question 1 — Can a land owner, who owns the surface rights quiet title tothe mineral interest which were severed from the property and sold by atax deed pertaining to mineral interest only in the 1970s and if so whatis the procedure?
This question uses the words "quiet title," which is a legal term having a fixed legal significance. It has been stated that a "quiet title" action is a "request to the court of equity to declare that the title to the property in question is in plaintiff as against a particular defendant or defendants, or against the world." See, Covington, Bills toRemove Cloud on Title and Quieting Title in Arkansas, 6 Ark. L. Rev. 83 (Spring 1952). In Arkansas the words may either refer to a common law "quiet title" action or to the statutory quiet title action authorized at A.C.A. § 18-60-501 to -511 (Repl. 2003). See e.g., Brown v. Minor,305 Ark. 556, 810 S.W.2d 334 (1991).
It has been stated generally that ". . . a prima facie case to quiet title requires a showing that the plaintiff has legal title to the property and is in possession." Koonce v. Mitchell, 341 Ark. 716, 718,19 S.W.3d 603 (2000) (emphasis added), citing Gingles v. Rogers,206 Ark. 915, 175 S.W.2d 192 (1943). See also, Potlatch Corp. v. Triplett,70 Ark. App. 205, 16 S.W.3d 279 (2000). The "title" and "possession" requirements apparently apply whether the action to quiet title is one under the common law or under the applicable statutory procedure.[1]See e.g., Koonce, supra; A.C.A. § 18-60-501; and Winkle v. SchoolDistrict No. 81, Independence County, Ark. 215 Ark. 670, 221 S.W.2d 884
(1949).[2]
Cases have been filed and maintained by mineral interest title holders and in some cases by surface owners to quiet title to mineral interests.See e.g., Haynes v. Metcalf, 297 Ark. 40, 759 S.W.2d 542 (1988); Petersonv. Simpson, 286 Ark. 177, 690 S.W.2d 720 (1985); Hill v. Gilliam,284 Ark. 383, 682 S.W.2d 737 (1985); Wasp Oil v. Arkansas Oil and Gas, Inc.,280 Ark. 420, 658 S.W.2d 397 (1983); Bradley v. Teague, 266 Ark. 1013,589 S.W.2d 200 (1979); Helms v. Vaughn, 250 Ark. 828, 467 S.W.2d 399
(1971); Burbridge v. Rosen, 240 Ark. 500, 400 S.W.2d 502 (1966); Garvanv. Kimsey, 239 Ark. 295, 389 S.W.2d 870 (1965); Laney v. Monsanto,233 Ark. 922, 286 S.W.2d 826 (1961); Grayson v. Arrington, 225 Ark. 922,286 S.W.2d 501 (1956); Skelly Oil v. Johnson, 209 Ark. 1107, 194 S.W.2d 425
(1946); Missouri Pac. R. Co. v. Strohacker, 202 Ark. 645, 152 S.W.2d 557
(1941); and Bond v. Marlin, 199 Ark. 806, 136 S.W.2d 460 (1940). Seealso, Covington, supra (stating that "[t]he owner of a mineral interest only should be able to maintain a suit to quiet title since there is not an adequate remedy at law" and "[t]hus chancery will quiet title to an interest in the oil and gas in and under land," citing Lancaster v.Kathleen Oil Co., 241 U.S. 551 (1916) and Bond v. Marlin, 199 Ark. 806,136 S.W.2d 460 (1940).
In cases where the validity of a tax deed to minerals is involved, however, the action brought by a landowner or a previous record holder of the minerals is often not termed a "quiet title" action, but is simply brought as an action to cancel or set aside the tax title or tax deed.See, e.g., Sorkin v. Myers, 216 Ark. 908, 227 S.W.2d 958 (1950);Stienbarger v. Keever, 219 Ark. 411, 242 S.W.2d 713 (1951); Davis v.Stonecipher, 218 Ark. 962, 239 S.W.2d 756 (1951); Adams v. Bruder,275 Ark. 19, 627 S.W.2d 12 (1982); Garvan v. Potlatch Corp., 278 Ark. 414,645 S.W.2d 957 (1983); and Dawdy v. Holt, 281 Ark. 171, 662 S.W.2d 818
(1914). This type of action has been referred to as an action to "remove a cloud on title" and is described as "an equitable remedy whereby a particular claim of a defendant, usually evidenced by an instrument, is declared to be invalid or inapplicable to plaintiff's title. . . ." See,
Covington, Bills to Remove Cloud on Title and Quieting Title inArkansas, 6 Ark. L. Rev. 83 (Spring 1952). It has been stated with regard to these types of actions that: "[t]he law is well established that a plaintiff must show title in himself before he will be allowed to attack the tax title of another." Davis v. Stonecipher, 218 Ark. 962, 964,239 S.W.2d 756 (1951) citing Bowles v. Dierks Lumber Coal Company
[footnoted omitted], 217 Ark. 892, 233 S.W.2d 632.[3] The Court has stated however, that "in a suit to cancel a void tax deed, the plaintiff need not deraign title with the same exactness as is required in actions in ejectment or in suits to quiet title." Id. Nonetheless, a landowner seeking to cancel a tax deed and establish title to the mineral interests underlying his land must prove some type of title in himself, either legal title derived from deeds, reservations or grants, or through adverse possession.[4]
If the landowner does not have any type of record title to the severed mineral interests, he may be forced to rely on the concept of adverse possession to establish his right to the minerals. It has been held that in order for a person without record title to show "possession" of severed minerals for purposes of establishing title by adverse possession, actual production of the minerals is required. See, Claybrookev. Barnes, 180 Ark. 678, 22 S.W.2d 390 (1929) (owner of the surface did not acquire title to the severed mineral estate in wild and unimproved lands by the payment of taxes for seven years; title to the mineral rights can never be acquired by merely holding and claiming the land, the only way the statute of limitation can be asserted is for the landowner or some other person to take actual possession of the minerals by opening mines and operating the same); Taylor v. Scott, 285 Ark. 102,685 S.W.2d 160 (1985) (when a mineral ownership has been severed by deed from the surface ownership, adverse possession of the surface is ineffective against the owner of the minerals unless the possessor actually invades the minerals by opening mines or drilling wells and continues that action for the necessary period).[5] See also, Bonds v. Carter, 348 Ark. 591,75 S.W.3d 192 (2002).
In response to your first question, therefore, although a landowner owning the surface estate is free to file an action to quiet title or to remove a cloud upon title in an attempt to cancel the tax deed, it may be difficult for him to establish his own right to the mineral interests if he does not have any record title to the minerals or has not engaged in actual production of the minerals so as to prove his title by adverse possession. It has been stated in this regard that the plaintiff in such an action must rely on the strength of his own title and not the weakness of the defendant's title. See, e.g., Abbott v. Pearson, 257 Ark. 694,520 S.W.2d 204 (1975).[6]
This is the case even though the title of the holder of the tax deed may be very weak indeed. Tax deeds issued in the 1970s to severed mineral interests are generally void because of a defect in assessment proceedings undertaken during that time period. One of my predecessors had occasion to address this issue in Op. Att'y. Gen. 89-195. He stated:
 In Dawdy [v. Holt, 281 Ark. 171, 662 S.W.2d 818 (1984)], the Supreme Court held that a tax deed to mineral interests was invalid because the local county clerk maintained separate books for real estate assessments and mineral interest assessments. That decision was based upon a long line of cases starting with Sorkin v. Myers, 216 Ark. 908, 227 S.W.2d 958 (1950). In Sorkin, the court found that because the clerk's office listed the mineral interests in a separate book from the real estate records, and listed them alphabetically, it was only possible to look up the assessment of the mineral interest if the current holder's name was known. Otherwise it was necessary to look through the entire alphabetical listing of over four thousand names to discover the assessment. (The real estate listings were indexed by section, range, and township numbers; that is, it was possible to reference them by "land calls".) The court held that this difference in treatment of mineral interests and real estate violated due process of law. . . ."
* * *
 Thus, the concept of "subjoinder" became a prerequisite to the validity of tax deeds transferring mineral interests. The court upheld the requirement in several subsequent cases. See, Stienbarger v. Keever, 219 Ark. 411, 242 S.W.2d 713 (1951); Davis v. Stonecipher, 218 Ark. 962, 239 S.W.2d 756 (1951); Adams v. Bruder, 275 Ark. 19, 627 S.W.2d 12 (1982); and Walker v. Western Gas Company, 5 Ark. App. 226, 635 S.W.2d 1 (1982); and Garvin [Garvan] v. Potlatch Corp., 278 Ark. 414, 645 S.W.2d 957
(1983). In the cases cited above, the mineral interests were not all listed by section, range, township, etc.
 In two later cases, the court was faced with the question of whether "subjoinder" was required where the mineral interests were listed separately, but also were listed by section, township, and range, so as to be identifiable by tract. The Court of Appeals in Blackburn v. Cline, 8 Ark. App. 108, 650 S.W. 2d 588 (1983), recognized the force of the appellant's argument that listing by section, township, and range is sufficient to satisfy due process, but felt constrained to hold otherwise because of Garvan. The next decision was Dawdy, which held that" subjoinder" was required even though due process was otherwise satisfied, stating:
 The appellants also point out that, unlike the case in Sorkin, the assessment method used did not deprive the taxpayer of due process of law, obscure the information from the taxpayer, prejudice the taxpayer, or burden an easy determination by an owner of his tax status at a given time. Our cases have taken a clear direction for years in this matter and if any change is needed, as the appellants suggest, it is a matter for the legislature.
Op. Att'y. Gen. 89-195 at 1-3.
Although the General Assembly has made several attempts to remedy the situation, it does not appear that any subsequent action by the General Assembly would have the effect of validating outstanding severed mineral interest tax deeds issued in the 1970s and now in the hands of private parties. See more recently, however, A.C.A. § 26-26-1112 (Act 961 of 1985), effective April 15, 1985 (authorizing county assessors to maintain separate records for severed mineral interests if the records are maintained by legal description); Op. Att'y. Gen. 89-195 (holding that what is now A.C.A. § 26-26-1112 in all likelihood did not have retroactive application to tax deeds arising before its passage) andGilbreath v. Union Bank, 309 Ark. 360, 830 S.W.2d 854 (1992) (implying that § 26-26-1112 does not have retroactive application to validate non-subjoined mineral interests tax deeds issued prior to its enactment). See also, A.C.A. § 26-38-124 (now repealed, comprising the codification of Act 234 of 1989, effective February 24, 1989, repealed by Act 904 of 1989, effective July 3, 1989, two acts that arguably created a window period for validly issued severed mineral interest tax deeds, assuming no constitutional defects); and 26-37-314 (Act 864 of 1993, as amended by Act 1279 of 2003) (validating deeds issued under the new procedure established in that section, even though the assessment was not subjoined and making the validation retroactive to all certifications of delinquent mineral interests in the records of the Commissioner of State Lands).[7]
Despite the widespread invalidity of severed mineral interest tax deeds issued in the 1970s, a surface owner wishing to quiet title to mineral interests will, as noted above, have to rely on the strength of his own title to prevail. When filing such an action, the former owner of the severed mineral interest estate or his heirs (the owner of the mineral interests prior to the tax sale of the mineral interests), must be given notice of the action. See Gilbreath v. Union Bank, 309 Ark. 360,830 S.W.2d 854 (1992) (trustee for record holder of mineral interests successfully set aside confirmation of tax deed where trustee was not notified as required by Arkansas Rules of Civil Procedure); Hurst v.Rice, 278 Ark. 94, 99, 643 S.W.2d 563 (1982); ("[o]ne seeking confirmation of a mineral title has constructive knowledge of a previous deed of record and is required to make that prior deed holder a party to the proceeding if the prior deed holder is to be bound); and cf., Welchv. Burton, 221 Ark. 173, 252 S.W.2d 411 (1952) (confirmation decree in favor of petitioner who acquired title through purchase of tax title was void where heirs of former owner were not named parties defendant in the quiet title action). Even if the mineral interest tax deed is void, therefore, if the owner of the surface estate cannot prove the strength of his own title, by adverse possession or otherwise, title may be quieted in the former record owner of the mineral interests and not the landowner.[8] See e.g., Dawdy v. Holt, 281 Ark. 171, 662 S.W.2d 818
(1984). As noted above, however, issues involving land titles and particularly titles to severed mineral interests must necessarily be evaluated under the facts of individual cases. I cannot come to any general conclusions that will be applicable in every case. Individual landowners should consult private counsel to evaluate the facts with regard to particular property.
Question 2 — Can a non-surface owner quiet title to mineral interestreceived by tax deed in the 1970s and if so, what is the procedure?
As noted above, a delinquent mineral interest tax deed issued in the 1970s is in all likelihood void. It will not operate alone to vest good title in the holder, absent production of minerals for the statutory period. See, Garvan v. Potlatch Corp., 278 Ark. 414, 645 S.W.2d 957 (1983) (payment of taxes on severed mineral interests acquired by tax deed not sufficient to give color of title without actual possession by opening and operating mines). A similar conclusion was reached in Hurst v. Rice,supra, where the court stated as follows:
 A void mineral tax deed can be sufficient color of title for the purpose of determining title by adverse possession. Skelly Oil Co. v. Johnson, 209 Ark. 1107, 194 S.W.2d 425 (1946). However, to constitute adverse possession of constructively severed minerals, there must be a continuous user of the minerals for the statutory period. Even a sporadic user is not sufficient. Skelly Oil Co. v. Johnson, supra, citing Claybrooke v. Barnes, 180 Ark. 678, 22 S.W.2d 390, 67 A.L.R. 1436 (1929).
Id. at 99.
Additionally, as stated in Adams v. Bruder, supra:
 We do not mean to imply that mineral interests could never be ripened into a good title if the original deed was defective. We held in the case of Claybrooke v. Barnes, 180 Ark. 678, 22 S.W.2d 390 (1929), that the only way the statute of limitations would run against the owner of the mineral rights is for the owner of the surface rights or some other person to take actual possession of the minerals by opening mines and operating same.
* * *
 In the early case of Woolfolk v. Buckner, 67 Ark. 411, 55 S.W. 168
(1900), we dealt with a claim concerning a tax title and adverse possession, stating:
 . . . There is only one way in which the owner can be dispossessed or disseised by an illegal tax sale, and that is by actual adverse possession . . . If the original owner of the legal title was in constructive possession because he had the legal title, how could the claimant under the void tax title have the constructive possession at the same time? To so hold would be to give to possession under a void tax title more legal effect than to possession under a valid legal title . . .
Id. at 22.
As for the procedure to be utilized by a tax deed holder, although there is some uncertainty surrounding the issue,[9] quiet title actions have been filed by mineral interest tax deed holders to quiet their tax title (see e.g., Hurst v. Rice, supra and a previous action referred to inGilbreath v. Union Bank, supra). In some cases, tax deed holders have sued for an "accounting" as to the profits from the mineral interests.See e.g., Walker v. Western Gas, 5 Ark. App. 226, 635 S.W.2d 1 (1982); and Laney v. Monsanto, 233 Ark. 645, 348 S.W.2d 826 (1961). In addition, there is a statutory procedure which gives the Commissioner of State Lands the option of filing an action to confirm the title of a tax deed (including a mineral tax deed). See A.C.A. §§ 26-38-201 to -209 (Repl. 1997). It is my understanding, however, that this option is rarely invoked by the Commissioner and in any event, the holder of a mineral interest tax deed issued in the 1970s would be subject to the defenses of interested parties, including the defense that the tax deed is void under the invalid assessment practices referred to above. See A.C.A. §26-38-204(c)(1). The "in rem" confirmation procedure set out in A.C.A. §18-60-601 to -610, to "confirm public sales," it not available because it has been held inapplicable to mineral interests. See Schuman v. CertainLands, 223 Ark. 85, 264 S.W.2d 413 (1954).[10]
Again, however, with any chosen procedural vehicle, the tax deed holder may have a difficult time proving good title to the severed minerals on the strength of a void mineral interest tax deed. It is possible that title by adverse possession might be established, as discussed above, by actual production of the minerals for the required time period. Otherwise, an action brought by a tax deed holder to quiet the title may result in a judgment in favor of the prior severed mineral interest deed holder.
Again, I must stress that issues involving land titles and particularly titles to severed mineral interests must necessarily be evaluated under the facts of individual cases. I cannot determine the matter conclusively as to any particular property. In addition, the general conclusions reached in this opinion should not be taken as private legal advice. Interested parties must consult private legal counsel of their choosing to ensure their rights are protected.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] If the plaintiff is proceeding under the statutory procedure, however, there is an option, if perfect title cannot be shown, to make aprima facie case as to the title element by showing color of title for more than seven years and continuous payment of taxes for that period. Such a prima facie case will only vest title in the plaintiff, however, if the facts are not controverted. See Broadhead v. McEntire,19 Ark. App. 259, 720 S.W.2d 313 (1986) and Kennedy v. Burns, 140 Ark. 367,215 S.W. 618 (1919). It is doubtful, however, in light of Arkansas case law, whether this prima facie requirement can be used to establish title to the mineral interests without actual possession of the minerals. See,
discussion infra and Susan Weber Wright, ARKANSAS LAW OF OIL AND GAS, 9 U.A.L.R.L.J. 223, 228 (1986-87).
[2] The possession requirement was often deemed necessary to invoke equity jurisdiction (see, e.g., Winkle v. School District No. 81,Independence County, Ark. 215 Ark. 670, 221 S.W.2d 884 (1949), otherwise, it was held that the remedy at law (in ejectment), was adequate and the party in possession was entitled to a trial by jury.Id. The cases are not entirely consistent, however, and exceptions were made in certain circumstances. See e.g., Weaver v. Gilbert,214 Ark. 800, 218 S.W.2d 353 (1949) (plaintiff not in possession may maintain suit to quiet title where defendant in possession filed a cross-bill on matters cognizable in equity); and Shirk v. Williamson,50 Ark. 562, 9 S.W. 307
(1888) (plaintiff having legal title to wild, unoccupied, uncultivated lands may maintain quiet title action without possession). It has also been held that equity jurisdiction to cancel a cloud on title will be exercised where neither party is in possession or where the remedy at law is not adequate. See, McKim v. McLiney, 250 Ark. 423,465 S.W.2d 911 (1971). It has also been suggested that the possession requirement should not foreclose equity jurisdiction to the owner of a mineral interest seeking to quiet title. See Covington, supra at 99. Although Arkansas Constitution, Amendment 80 merged the chancery and circuit courts, it has been stated that "[b]ecause Amendment 80 states that circuit courts assume the jurisdiction of chancery courts, circuit courts simply have added to their already existing jurisdiction as a court of law the equitable jurisdiction which chancery courts held prior to adoption of the Amendment. First Nat'l. Bank of DeWitt v. Cruthis,
Ark. Sup. Ct. 04-448, Feb. 10, 2005).
[3] It does not appear that a showing of possession is necessary to invoke equity jurisdiction in an action as to minerals. See e.g. Sorkin,Stienbarger, Davis, Adams, Garvan and Holt, supra.
[4] There is also a statutory provision for contesting the validity of a warranty deed issued by the Commissioner of State Lands. See A.C.A. §26-37-203 (Repl. 1997). It contains a two-year statute of limitations for bringing the action. This statute was not passed until 1983, however. The applicability of the statute to a mineral interest tax deed issued in the 1970s is therefore in doubt. Another statute setting two-year statute of limitations for setting aside a tax deed (A.C.A. § 18-60-212), has been held inapplicable to mineral interests in cases where there is no possession of the minerals evidenced by actual production. See e.g.,Walker v. Western Gas Co., 5 Ark. App. 226, 635 S.W.2d 1 (1982); andLaney v. Monsanto, 233 Ark. 645, 348 S.W.2d 826 (1961).
[5] If the minerals have not been severed from the surface estate, "adverse possession of the surface is also adverse possession of the minerals, even if the minerals have not been produced." See, Susan Weber Wright, THE ARKANSAS LAW OF OIL AND GAS, 9 U.A.L.R.L.J. 223 (1986-87). It has also been suggested that if the two estates are unified when the adverse possession begins, the adverse possession extends to the minerals as well. Id. At 228, citing Burbridge v. Rosen, 240 Ark. 500,400 S.W.2d 502 (1966).
[6] An exception is made where both parties trace their title to a common source. Collins v. Heitman, 225 Ark. 666, 284 S.W.2d 628 (1955);Eickhoff v. Scott, 137 Ark. 170, 208 S.W. 421 (1918); and Fetzer v.Bodcaw Co., 601 F.2d 356 (8th Cir. 1979).
[7] In response to the uncertainty surrounding severed mineral interests, some states have enacted "Dormant Mineral Acts," which "take `unused' or `dormant' severed mineral estates from their owners and merge those estates with the surface estates from which they were carved." Joshua Elias Teichman, (Comments) "Dormant Mineral Acts and Texaco, Inc.v. Short, Undermining the Taking Clause," 32 Am. U.L. Rev. 157 American University Law Review Fall, 1982. See also, Shirley Norwood Jones, "Constitutional and Practical Problems in Legislation to TerminateNon-productive Mineral Interests," 3 Miss. C.L. Rev. 175 Spring, 1983. Arkansas has not adopted any such legislation. See, however, A.C.A. §26-37-314 (establishing a new procedure for the sale of delinquent mineral interests).
[8] Of course, if the holder of the tax deed fails to pay the taxes on the mineral interest and it is forfeited to the State, the landowner may eventually have an opportunity to purchase the mineral interests under the new procedure outlined in A.C.A. § 26-37-314 (Supp. 2003).
[9] Some uncertainty as to whether a "quiet title" action may be filed by a tax deed holder to quiet his title may arise form the decision inSchuman v. Certain Lands, 223 Ark. 85, 264 S.W.2d 413 (1954). In that case, the Arkansas Supreme Court held that what is now A.C.A. § 18-60-601
to -610, providing a procedure to confirm title acquired at a tax sale, did not apply to tax sales of severed mineral interests. In my opinion, that holding dealt exclusively with the applicability of the statutory
procedure for confirmation of tax titles and does not purport to restrict the judicial branch's inherent or common law jurisdiction to quiet title at least in adversary proceedings. See Knauff v. National Cooperage Co.,87 Ark. 494, 113 S.W. 28 (1908). Neither does it purport to restrict the use of the general statutes regarding the quieting of title. See, e.g.,Abbott v. Butler, 211 Ark. 681, 201 S.W.2d 1001 (1947); and Covington,supra at 104 (stating that ". . . jurisdiction to confirm tax titles under [18-60-601 et seq.] is not exclusive. Tax titles can also be confirmed under [18-60-501 et seq.] or under the inherent jurisdiction of equity. . . ." As noted above, however, interested parties will be entitled to actual notice in such cases. See supra at p. 9.
[10] Senate Bill 189 of the 85th General Assembly would have made this subchapter applicable to mineral interests, but it did not become law and has been referred for interim study by the Committee on Revenue and Taxation. See also, Act 2270 of 2005, rendering certain tax titles "marketable," but excluding mineral interest at § 18-12-608(d).