SLIP OPINION

Cite as 2015 Ark. App. 555

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-178

| | |
|---|---|
| SEECO, INC.; JOYCE WALLS; AND JACK G. WALLS AND JOYCE J. WALLS AS CO-TRUSTEES OF THE JACK G. WALLS AND JOYCE J. WALLS REVOCABLE TRUST<br><br>APPELLANTS<br><br>V.<br><br><br>CARVER L. HOLDEN; CHESAPEAKE OPERATING, INC.; CHESAPEAKE EXPLORATION, LIMITED PARTNERSHIP; CHESAPEAKE EXPLORATION, LLC; CHESAPEAKE INVESTMENTS; BP AMERICA PRODUCTION COMPANY; BHP BILLITON PETROLEUM (FAYETTEVILLE), LLC; AND RIVERBEND EXPLORATION AND PRODUCTION, LLC<br><br>APPELLEES | **Opinion Delivered** October 7, 2015<br><br>APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. CV-2009-679]<br><br>HONORABLE THOMAS M. HUGHES, JUDGE<br><br>REVERSED AND REMANDED |

## DAVID M. GLOVER, Judge

In this oil-and-gas case, appellant Joyce Walls and her lessee, SEECO, Inc., appeal from

an order vesting ownership of certain minerals in appellee Carver L. Holden. We reverse and

remand for further proceedings.[1]

---

[1] The Jack G. Walls and Joyce J. Walls Revocable Trust and several of Holden's lessees are also parties to this appeal. For convenience, we will refer only to Walls as the appellant and Holden as the appellee.

I. *Background*

The minerals in question are subsurface to approximately 95 acres in Section 18, Township 9 North, Range 7 West in White County. In 1912, appellant Joyce Walls's grandfather, W.M. Howell, acquired the acreage and its minerals. Howell later sold the property to Clotene and Raymond Cox in 1948, but he retained an undivided one-half mineral interest in himself.

In 1952, Mr. and Mrs. Cox deeded the 95 acres to Ola and Carver Ray Holden, the parents of appellee Carver L. Holden. The deed granted Mr. and Mrs. Holden the entire interest in the property, save and except the undivided one-half mineral interest previously reserved by W.M. Howell.

Howell died in 1953. His one-half mineral interest then passed to his daughter, Grace Marshall. Ms. Marshall did not pay the taxes on the minerals, and a tax-delinquency sale was conducted in 1958. At the sale, Carver Ray Holden purchased Ms. Marshall's one-half mineral interest. This purchase, when combined with Carver Ray's ownership of the surface and the other one-half mineral interest, appeared to unify the property's ownership in him.

In 1983, Grace Marshall died, leaving a son, Duane Marshall, and a daughter, appellant Joyce Walls. Duane died in 2000, after which Walls considered herself the sole owner of the undivided one-half mineral interest that had been retained by her grandfather many years earlier. In November 2005, Walls executed an oil-and-gas lease of the 95 acres to the T.S. Dudley Land Company. The lease was subsequently assigned to SEECO. However, Walls conducted no drilling on the property.

In September 2006, Carver Ray Holden deeded the 95 acres and all of its minerals to

his son, appellee Carver L. Holden. Thereafter, Carver L. Holden executed a mineral lease to Chesapeake Exploration Limited Partnership. Chesapeake began drilling operations on May 21, 2007, and, as of January 2008, three wells were producing natural gas.[2]

Joyce Walls would later testify that she became aware of Holden's wells in April 2009. On September 4, 2009, she filed a quiet-title action to protect her interest in the minerals. Her complaint alleged that the 1958 tax sale, by which Holden's predecessor obtained a deed to her family's one-half mineral interest, was void. She therefore claimed that she retained ownership of that half interest and that she was entitled to an accounting for the production and income from the wells. Holden responded that Walls's suit was time-barred because it was filed more than two years after his drilling operations had begun.

A bench trial was held, and the court heard the evidence described above. In addition, Sherry Williams, an employee of the White County Tax Collector's Office, testified that the county's 1957 assessments, from which the 1958 tax sale arose, did not subjoin the mineral interests to surface interests.[3] Instead, she said, the mineral interests were located in a separate part of the assessment book. Another witness, Chesapeake land man Jim Kelly, acknowledged that Walls's mineral interest in the 95 acres was listed in Chesapeake's Declaration of Pooling in the subject area in White County. Kelly said, however, that Walls's interest was listed out of an abundance of caution, on the chance that she did have a legitimate mineral interest.

---

[2] Chesapeake later assigned all or part of its interest in the Holden lease to BP America, BHP Billiton, and Riverbend Exploration.

[3] Subjoinder means that separate mineral interests in a plot of land must be listed individually immediately after each respective fee or surface interest. *See Garvan v. Potlatch Corp.*, 278 Ark. 414, 645 S.W.2d 957 (1983).

Following the trial, the circuit court ruled that Walls did not own the mineral rights she purported to lease; that she did not have possession of the mineral rights within two years before she commenced her lawsuit; that Holden took possession of the minerals on May 21, 2007, upon drilling the first well; and that Walls's September 2009 suit was therefore barred by the two-year statute of limitations in Arkansas Code Annotated section 18-61-106(a) (Repl. 2003). The court quieted title to the disputed one-half mineral interest in Holden and declared that his lessees had the rights afforded them by lease or assignment. Walls filed this appeal.[4]

## II. *Standard of Review*

Quiet-title actions have traditionally been reviewed de novo as equity actions. *Sutton v. Gardner*, 2011 Ark. App. 737, 387 S.W.3d 185. However, the circuit court's findings of fact will not be reversed unless they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Flowers v. Amerisourcebergen Drug Corp.*, 2012 Ark. App. 224.

## III. *Walls's Ownership of Mineral Interest*

Walls first argues that the circuit court erred in declaring that she did not own the mineral interests that she leased to Dudley/SEECO in 2005. She contends that, to the contrary, her family maintained good title to an undivided one-half mineral interest because the 1958 tax sale, by which Holden's predecessors purported to buy her half interest, was void.

---

[4] We dismissed an earlier appeal for lack of a final order. *SEECO, Inc. v. Holden*, 2014 Ark. App. 227. The appellants returned to circuit court, obtained a final order, and filed a timely notice of appeal.

We agree.

The undisputed testimony of White County tax official Sherry Williams was that, at the time the tax sale in this case took place, the severed mineral assessments in White County were located in a separate part of the county assessment book from surface interests. The mineral assessments therefore were not subjoined to the surface assessments as required by the law at that time.[5] As a result, the power to sell for delinquent taxes was lacking. *Sorkin v. Myers*, 216 Ark. 908, 227 S.W.2d 958 (1950). Thus, the 1958 tax sale of the one-half mineral interest and the accompanying tax deed to Holden's predecessor were void. *Gilbreath v. Union Bank*, 309 Ark. 360, 830 S.W.2d 854 (1992); *Garvin v. Potlatch Corp.*, 278 Ark. 414, 645 S.W.2d 957 (1983). The Walls family therefore maintained their ownership of an undivided one-half mineral interest and, consequently, Walls and Holden each now hold legal title to an undivided one-half mineral interest in the 95 acres.

Nevertheless, a defective mineral deed such as Holden's can ripen into good title. As explained in the next section, for that to occur, the holder of the defective deed must disseize the legal owner by adversely possessing the minerals for two years before the legal owner files suit. *See Hurst v. Rice*, 278 Ark. 94, 643 S.W.2d 563 (1982); *Adams v. Bruder*, 275 Ark. 19, 627 S.W.2d 12 (1982); *Sage Land & Lumber Co. v. Hickey*, 222 Ark. 147, 257 S.W.2d 941 (1953); *Honeycutt v. Sherrill*, 207 Ark. 206, 179 S.W.2d 693 (1944).

---

[5] The legislature removed the subjoinder requirement in Act 961 of 1985, but the Act does not apply to assessments that occurred prior to its passage. *Gilbreath v. Union Bank*, 309 Ark. 360, 830 S.W.2d 854 (1992).

Cite as 2015 Ark. App. 555

IV. *The Two-Year Statute of Limitations*

The two-year adverse-possession requirement arises from the statute of limitations found in Arkansas Code Annotated section 18-61-106(a) (Repl. 2003):

> No action for the recovery of any lands or for the possession thereof against any person or persons, their heirs and assigns, who may hold such lands by virtue of a purchase thereof at a sale by the collector, or the Commissioner of State Lands, for the nonpayment of taxes . . . shall be maintained, unless it appears that the plaintiff, his or her ancestors, predecessors, or grantors, was seized or possessed of the lands in question within (2) two years next before the commencement of the suit or action.

This statute has been interpreted to mean that a person holding land (or a mineral estate) by virtue of an invalid tax deed may nevertheless dispossess the legal owner and gain good title if he possesses the property adversely and continuously for two years before the legal owner files suit. *Hurst, supra; Adams, supra; Sage Land & Lumber Co., supra; Honeycutt, supra.*

Citing the above statute, the circuit court ruled that Holden possessed the disputed one-half mineral interest and disseized Walls by drilling for minerals on the property continuously for two years before Walls filed suit in September 2009. Walls argues that the court erred in its ruling. We agree.

The parties initially argue over what point marks the beginning of the two-year limitations period. Walls insists that Holden's January 2008 onset of gas production is the starting point, thus making her September 2009 lawsuit timely. Holden claims (and the circuit court agreed) that the statute of limitations commenced with his drilling activities in May 2007 and continued for two years thereafter, thus barring Walls's September 2009 suit. Our review of the case law indicates that the point at which adverse possession begins for purposes of

section 18-61-106(a) is not clear. In *Claybrooke v. Barnes*, 180 Ark. 678, 682, 22 S.W.2d 390, 392 (1929), our supreme court held that adverse possession under the above statute begins with an occupant's "opening mines and operating same"; and in *Taylor v. Scott*, 285 Ark. 102, 104, 685 S.W.2d 160, 161 (1985), upon an occupant's "opening mines or drilling wells." Our court has stated that, to be in possession of a constructively severed mineral interest, "actual production" is required. *Walker v. Western Gas Co.*, 5 Ark. App. 226, 228, 635 S.W.2d 1, 2 (1982).

We need not decide the point, however. As Walls also argues, regardless of when the statute of limitations began to run, neither Holden's mineral exploration nor his production was shown to be adverse to Wall's undivided one-half interest in the minerals.

The adverse possession required by section 18-61-106(a) must be of such character as to put the legal owner on notice that his rights are being challenged. *See Taylor*, *supra*; *Adams*, *supra*. As mentioned, Walls and Holden each hold an undivided one-half interest in the minerals. As co-owners of the mineral interests, they each have an equal right to go onto the 95 acres and drill for minerals, subject only to the duty to account to their co-owner. *See* 1 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers, Oil & Gas Law*, §§ 224.3 & 224.4 (2014). Thus, whatever infringement occurred when Holden went onto the land and drilled for minerals without Walls's consent it was not sufficient to constitute notice to Walls of his exclusive possession of the minerals or an intent to oust her of her undivided one-half interest. We therefore agree with Walls that Holden's possession was not adverse, as required for his

defective tax deed to ripen into good title. Accordingly, Walls's quiet-title action is not barred by the statute of limitations, and we reverse and remand for further proceedings.[6]

## V. *Alternative Reasons for Affirmance*

Holden asserts two alternative reasons for affirming the circuit court. We may affirm where the court reaches the right result, even if the court announced a different reason. *Foust v. Montez-Torres*, 2015 Ark. 66, 456 S.W.3d 736.

First, Holden cites a 1983 lawsuit in which Walls and her brother, Duane, sued Ola and Carver Ray Holden with regard to mineral interests on the subject property. The case was nonsuited in October 1983. Holden contends that, because Walls did not refile the suit within one year, her current lawsuit is barred under the Arkansas Savings Statute. Ark. Code Ann. § 16-56-126 (Repl. 2005). We decline to affirm on this ground. The court clerk could not locate the entire file from the 1983 lawsuit, and several important items were missing, including the complaint and other pleadings. Like the circuit court, we are reluctant to dismiss Walls's current quiet-title action in the absence of more documented information about the 1983 proceedings.

Holden also claims that Walls sat on her rights after filing the 1983 lawsuit; therefore, her lawsuit should be barred by the equitable doctrines of laches and estoppel. For the reasons stated above, we also decline to affirm on this ground.

---

[6] Holden contends that Walls makes this "co-tenancy" argument for the first time on appeal. Yet Walls argued below that the parties were co-tenants in the minerals, that Holden had the burden of proving adverse possession, and that Holden and Chesapeake's possession was not exclusive.

Reversed and remanded.

VIRDEN and VAUGHT, JJ., agree.

*PPGMR Law, PLLC*, by: *R. Scott Morgan and Patrick Feilke*; and *Stephen C. Gardner*, for appellants.

*Lody & Arnold, Attorneys at Law, P.A.*, by: *Wesley G. Lody*, for appellees.